# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

United States of America ex rel.  )
JOHNNIE LEE EVANS, (#A-25103),  )
                               )     Case No. 99 C 7828
      Petitioner,  )
                               )     Hon. Joan Humphrey Lefkow
     v.  )
                               )
KENNETH R. BRILEY,[1] Warden,  )
Stateville Correctional Center,  )
                               )
      Respondent.  )

## MEMORANDUM OPINION AND ORDER

Following a jury trial in the Circuit Court of Cook County, habeas petitioner, Johnnie Lee

Evans, was convicted of murder and attempted rape of Adrian Allen and was sentenced to death.

On January 11, 2003, former Illinois Governor George Ryan commuted Evans' death sentence to

life in prison without the possibility of parole. After the commutation of his sentence, Evans

filed his second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

raising nine grounds for relief. Based on the following, the court denies Evans' habeas petition.

## I.    BACKGROUND

### A.    PROCEDURAL HISTORY

On May 2, 1984, a jury convicted Evans of murder and attempted rape. Because

*Batson v. Kentucky*, 476 U.S. 79 (1986), was decided during the pendency of Evans' direct

---

[1] The petitioner is currently incarcerated at Stateville Correctional Center. Because Kenneth R. Briley is the warden at Stateville, he is the proper respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. Therefore, this court substitutes Briley as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

appeal, the Illinois Supreme Court entered a supervisory order remanding the case to the trial court for a *Batson* hearing. On remand, the trial court found that Evans failed to establish a *prima facie* case of purposeful discrimination in the State's exercise of its peremptory challenges. On direct appeal, the Illinois Supreme Court affirmed Evans' convictions and sentences.

On June 27, 1990, Evans filed a post-conviction petition with the Circuit Court of Cook County. He filed an amended post-conviction petition on February 6, 1997. On May 17, 1997, the trial court granted the State's motion to dismiss the amended petition without conducting an evidentiary hearing. The Illinois Supreme Court affirmed the trial court's decision on February 19, 1999. On March 29, 1999, the Illinois Supreme Court denied Evans' petition for a rehearing.

Evans filed his notice of intent to file a habeas petition on December 2, 1999, and filed his habeas petition on March 30, 2000. Because this is Evans' first habeas petition and he filed it within one year after the conclusion of his post-conviction proceedings in the Illinois state courts, this court has jurisdiction to consider it. *See* U.S.C. § 2244(b), (d)(1), & (d)(2); *Gray v. Briley,* 305 F.3d 777, 778-79 (7th Cir. 2002).

Evans does not challenge the facts as set forth by the Illinois Supreme Court in its opinions affirming the judgements of the trial court. This court, therefore, presumes these facts are correct for purposes of collateral review. *See* 28 U.S.C. § 2254(e)(1); *Ward v. Sternes,* 334 F.3d 696, 703 (7th Cir. 2003) (habeas petitioner can rebut presumption with clear and convincing evidence). Thus, the court adopts the facts as set forth by the Illinois Supreme Court in Evans' direct and post-conviction appeals. *See People v. Evans,* 125 Ill.2d 50, 125 Ill.Dec. 790, 530 N.E.2d 1360 (Ill. 1988) (*Evans I*); *People v. Evans,* 186 Ill.2d 83, 237 Ill.Dec. 118, 708 N.E.2d 1158 (Ill. 1999) (*Evans II*).

2

## B.    JURY SELECTION

The jury selection transcript reveals that the State peremptorily challenged 17 potential jurors, five of whom were black. The State also peremptorily challenged two alternate jurors, one of whom Evans asserts was black. During the course of jury selection, Evans moved to dismiss on several occasions claiming that the State was improperly excluding black males from the jury. The trial court, nevertheless, found that there was no purposeful, systematic, or improper exclusion of jurors.

On remand, Evans submitted a stipulation entered into between defense counsel and the State which pertained to the composition of the jury and the State's use of peremptory challenges. The stipulation indicated that two blacks served on Evans' jury and that five blacks were peremptorily challenged by the State. The defense put in no other evidence. The trial court found that Evans did not establish a *prima facie* case of racial discrimination under *Batson v. Kentucky*, 476 U.S. 79 (1986).

## C.    PRETRIAL HEARING

At Evans' suppression hearing, John Markham, a detective with the Chicago Police Department, testified that on January 23, 1983, he and his partner were investigating the murder of Adrian Allen at a Chicago Housing Authority ("CHA") high-rise building located at 3547 South Federal Street. While at the CHA building, Detective Markham was contacted by his office regarding an earlier armed robbery and assault of an individual named Annie Webb that occurred in the same CHA complex on South Federal Street.

Detective Markham testified that he then returned to his office and reviewed the police report concerning the Webb investigation. Later that morning, he had a telephone conversation

3

with Webb in which she told him that she had additional information concerning her assailant and that he should talk to a woman named Diane Smith. She advised Detective Markham that Smith resided at 3517 South Federal Street, a CHA high-rise building adjacent to the building where Allen was murdered.

Later that afternoon, Detective Markham and his partner interviewed Smith at her apartment. Smith informed them that Johnnie "Richardson," the brother of her former boyfriend, visited her on January 17, 1983, at which time he demanded sex. When she refused, he threatened her with a knife and told Smith he was going to cut her throat. After retrieving her own knife from the kitchen, Smith was able to push him out the door. Smith told Detective Markham that she wanted to file a complaint and gave Detective Markham a description of "Richardson." She described him as five feet, four inches tall, black, 29 or 30 years old, 160 pounds, and that he wore glasses and had a "lazy eye." Smith also told the detectives that he lived in an apartment in her CHA building.

Detective Markham further testified that he and his partner proceeded to the described apartment and knocked on the door. After a woman answered the door, the detectives identified themselves as police officers and said they were looking for Johnnie Richardson. The woman invited them in, stating, "you mean, my son Johnnie Lee Evans." While the officers were talking to Evans' mother in the kitchenette, Evans walked into the room. He matched Smith's description of "Richardson." The detectives identified themselves and told him of the accusations against him. Evans responded that it was all a misunderstanding. The detectives placed Evans under arrest for the crimes perpetrated against Smith and Webb and took him to the police station at approximately 12:50 p.m. on January 23, 1983.

4

Further, Detective Markham testified that after he arrested Evans and took him to the police station, he placed Evans in an interview room. Detective Markham then left the interview room to review various files regarding the CHA housing development at South Federal Street. He learned of another rape victim, Maeline Mitchell, and that the rape occurred on January 18, 1983. Detective Markham returned to the interview room around 1 p.m. on January 23, 1983, and questioned Evans about the Webb, Smith, and Mitchell crimes. He also asked about the Allen homicide. Evans denied involvement in these crimes. Detective Markham also asked Evans for his clothes because they appeared to be blood-stained.

On the same day, Evans was placed in a lineup. Webb, Smith, and Mitchell identified him as their assailant. From 11 p.m. until 3 a.m. the next morning, Evans was questioned about the Smith, Webb, and Mitchell crimes, and the Allen homicide. In the early morning of January 24, 1983, Evans made his first inculpatory statement concerning the Allen homicide.

At approximately 4 p.m. on January 24, 1983, Detective Markham spoke with Evans again. Detective Markham then summoned an Assistant State's Attorney from Felony Review. Following a conversation with Assistant State's Attorney William Merritt, during which Evans made incriminating statements regarding the Allen homicide, Merritt asked Evans to make a formal written statement. Evans agreed and with a court reporter and Detective Markham present, Merritt read Evans his *Miranda* rights. Evans then gave his statement.

Cook County Judge Romie Palmer presided at Evans' pretrial hearing and denied Evans' motions to quash his arrest and suppress evidence. After ruling on these motions, Judge Palmer recused himself, *sua sponte*, based on his prior involvement with Evans' defense counsel.

Specifically, Judge Palmer had issued contempt citations against Evans' counsel in another case.

## D.     TRIAL EVIDENCE

Evans was charged with the murder of Adrian Allen, a 16-year-old girl who lived in a CHA apartment building on South Federal Street. A detective who arrived at the scene of the murder testified that two children found Allen's body in an elevator at the CHA building. Allen's pants were around her ankles and her jacket, sweater, and bra were pushed above her breasts. The medical examiner who performed Allen's autopsy testified that Allen had been stabbed 17 times in the face and body and that there were five additional incised wounds.

Other trial evidence included that of the crimes committed against Webb and Mitchell, among others. Webb testified that on January 16, 1983, Evans entered the elevator behind her and her two young children at her apartment building on 3615 South Federal Street. After the elevator started to rise, Evans pressed the stop button. He then pulled his hat down over his face and told her to open her coat. Webb offered her purse to Evans, but he said that he did not want her purse. Webb testified that after she opened her coat, Evans loosened some of her clothing and started to fondle her. Evans then told her to remove her clothes and lie down. When Webb refused to lie down, Evans hit her on the head. Webb testified that one of her children screamed after which Evans hit the child on the head as well. At that point, Webb stated that people started yelling for the elevator. Evans restarted the elevator and took Webb's purse in which she carried a white-handled knife with a lion depicted on it and the word "lion" written on it.

Mitchell testified that on January 18, 1983, Evans got on an elevator with her at her CHA apartment building at 3617 South Federal Street. Once the elevator started its ascent, Evans pushed the stop button, pulled down a ski mask, and opened a white-handled knife with the word

6

"lion" on it. Mitchell testified that she offered Evans what little money she had, but he said he did not want money. He started to fondle her and performed oral sex on her. He asked her to kiss him and squeeze him tight. Evans then took off his coat and put it in the middle of the elevator floor. Mitchell testified that he pointed a knife at her and told her to lie down on the coat. When she asked him to put down the knife, Evans said, "Lady, don't make me cut you up and leave you on this elevator." Evans then sexually assaulted her.

Evans gave three conflicting statements about the Allen murder to Detective Markham who testified about the statements at trial. Although there were inconsistencies in the three statements, in each statement Evans admitted to stabbing Allen. He stated that he stabbed Allen after she had provoked him or "went berserk." Also, he explained that any sexual contact with Allen was consensual.

## II.   LEGAL STANDARDS

### A.   HABEAS STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court must deny Evans' petition for a writ of habeas corpus with respect to any claim decided on the merits by the state court unless the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Id.* at 405.

7

A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407. A state court's application of Supreme Court precedent must be more than incorrect or erroneous, it must be "objectively" unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (reasonable state court decision must be at least minimally consistent with facts and circumstances of case).

## B.    PROCEDURAL DEFAULT

Before reviewing the Illinois Supreme Court's merits decisions, this court must determine whether Evans fairly presented his federal claims to the Illinois courts, because any claim not presented to the state's highest court is deemed procedurally defaulted. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999); *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir. 2001). Also, procedural default occurs when the state court did not address the petitioner's federal claim because the petitioner failed to meet independent and adequate state procedural requirements. *See Stewart v. Smith,* 536 U.S. 846, 860 (2002). Under Illinois law, waiver is an independent and adequate state ground. *See Whitehead v. Cowan,* 263 F.3d 708, 726-27 (7th Cir. 2001). Last, a federal court may not grant habeas relief on a procedurally defaulted claim unless the petitioner

8

can demonstrate cause for the default and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Anderson v. Cowan,* 227 F.3d 893, 899-90 (7th Cir. 2000).

## III. MOOT SENTENCING CLAIMS

On January 11, 2003, former Illinois Governor George Ryan commuted Evans' death sentence to natural life in prison without the possibility of parole. There are no challenges pending in any court related to this commutation. Since Evans' commutation, the Illinois Supreme Court has issued modified decisions on the denial of rehearing in other death penalty cases. In these cases, the Illinois Supreme Court concluded that former Governor Ryan's commutation of the defendant's death sentence rendered moot all capital sentencing claims. *See e.g., People v. Lucas,* 203 Ill.2d 410 (2003) (commutation removes judicially imposed sentence replacing it with executively imposed sentence); *People v. Miller,* 203 Ill.2d 433 (2003) (same). In a denial of an application for a certificate of appealability pursuant to 28 U.S.C. § 2253(c), the United States Court of Appeals for the Seventh Circuit concluded that due to the commutation of a petitioner's death sentence, the petitioner's habeas claims based on his death sentence were now moot. *See Wilson v. Mote,* No. 03-1943, slip op. at 1 (7th Cir. June 18, 2003).

Although Evans amended his habeas petition after the commutation of his death sentence, he nevertheless includes three death penalty claims in his second amended habeas petition. Contrary to Evans' assertion that these claims are still valid, this court concludes that any claim challenging his death sentence is now moot. These claims include: (1) he did not knowingly and intelligently waive his right to a jury in the capital sentencing phase of his trial (Claim 3); (2) ineffective assistance of counsel during the capital sentencing hearing (Claim 7); and (3) he was

9

denied a fair and reliable sentencing hearing (Claim 8). This court now turns to Evans' six remaining habeas claims.

## IV. EVANS' NON-CAPITAL HABEAS CLAIMS

### A. FOURTH AND FIFTH AMENDMENT (Claim 1)

Evans asserts that his inculpatory statements made to Detective Markham regarding the Allen murder should have been suppressed because his arrest based on Smith's misdemeanor complaint of aggravated assault was pretextual, and thus, there was no probable cause for his arrest and subsequent interrogation. Evans also argues that his statements should be suppressed because the police interrogated him after he invoked his Fifth Amendment right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

#### 1. Fourth Amendment Claim

Evans' first claim is based on the Fourth Amendment exclusionary rule. Because the exclusionary rule is not a personal constitutional right, "a person imprisoned following a trial that relies, in part, on unlawfully seized evidence is not 'in custody in violation of the Constitution or laws or treaties of the United States'" as required by 28 U.S.C. § 2254(a). *See Hampton v. Wyant*, 296 F.3d 560, 562 (7th Cir. 2002). "The *seizure* may have violated the Constitution, but the *custody* does not, because the exclusionary rule is a social device for deterring official wrongdoing, not a personal right of defendants." *Id.* at 562-63 (emphasis in original). Therefore, Fourth Amendment claims are not cognizable on federal collateral review unless the State did not provide the petitioner with an opportunity for the full and fair litigation of his claim. *See Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003) (whether state court's decision was correct is not at issue). A defendant receives a full and

fair opportunity to litigate if (1) he presented the claim's factual basis to the state court and argued the pertinent facts that constituted a violation of his Fourth Amendment rights; and (2) the state court carefully and thoroughly analyzed the facts and applied the proper constitutional law. See Hampton, 296 F.3d at 563.

The record reveals that Evans fully litigated his Fourth Amendment claim in the Illinois Circuit Court and to the Illinois Supreme Court. At his suppression hearing and on direct appeal, Evans presented the facts and circumstances surrounding Smith's misdemeanor complaint and Detective Markham's actions. He argued that the police did not have probable cause to arrest and interrogate him based on the misdemeanor complaint, claiming his arrest was a violation of the Fourth Amendment. After the trial court held a hearing on Evans' claim, the court denied Evans' motion and found probable cause for the arrest based on the Smith misdemeanor complaint and that Evans' mother consented to Detective Markham's entry into her home.

In his appellate brief to the Illinois Supreme Court, Evans argued that his arrest had "all the earmarks of an illegal pretext arrest," including that there was a time lapse between the offense and the arrest, he was arrested by a homicide detective, and the arrest was followed by procedures "which do not normally attend that type of arrest." In reviewing this claim, the Illinois Supreme Court stated:

> The trial court found that there was probable cause to arrest defendant on the Smith offense, and that the defendant was not arrested at that time for the Allen murder. A trial court's determination as to whether probable cause to arrest exists will not be disturbed unless it is manifestly erroneous. We are satisfied that the trial court's finding of probable cause to arrest for the misdemeanor is supported in the record. The officer, after talking to the victim, had her complaint fresh in hand, and he immediately proceeded to the place given by the victim where defendant could be found. The officer knocked and announced his office and

11

purpose and a woman invited him into her home where the defendant was arrested.

Any "delay" between the commission of the offense and defendant's arrest is irrelevant. The six-day lapse from the time of the Smith offense and the issuance of the complaint does not make defendant's arrest illegal. The defendant was arrested immediately after Smith filed a complaint with Detective Markham. Consequently there was no "delay" between the time the officers obtained probable cause to arrest and defendant's arrest.

The mere fact that an aggravated assault arrest is made by a violent crimes detective does not transform an otherwise lawful arrest into a pretextual arrest. Indeed, defendant cites no authority for this proposition and we are aware of none.

Finally, even though defendant was briefly asked about four offenses upon his arrival at the police station, that does not make his arrest pretextual. During this approximately five-minute encounter, defendant was asked only one question relating to the Allen murder – whether he knew about the girl found in the elevator. Merely because defendant was in custody for one charge does not preclude the police from investigating other unrelated charges concerning the defendant.

*Evans I,* 125 Ill.2d at 71-72, 125 Ill.Dec. at 798-99, 530 N.E.2d at 1368-69 (internal citations omitted).

The Illinois Supreme Court's decision addresses each of Evans' arguments and analyzes why both the arrest and subsequent investigation were lawful. Based on the Illinois courts' careful and thorough analyses of the facts and law, this court concludes that Evans received a full and fair opportunity to litigate his Fourth Amendment claim. *See Hampton,* 296 F.3d at 563. Consequently, Evans is barred from pursuing this claim in his federal habeas petition.

## 2. Fifth Amendment Claim

Evans claims that his inculpatory statements should have been suppressed because he invoked his right to counsel on two separate occasions, but the police and Assistant State's Attorney continued to question him during the custodial interrogations. The State argues that

Evans has procedurally defaulted this claim based on his request of counsel to Detective Markham because the claim was not fully and fairly presented to the Illinois Supreme Court. *See Boerckel*, 526 U.S. at 844-45.

A full and fair presentment requires that a petitioner present both the operative facts and controlling legal principles to the state court – a mere reference to a constitutional issue is not enough. *See Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). Factors relevant to whether a habeas petitioner has fairly presented a claim to the state courts include whether petitioner's state court argument: (1) relied on federal cases that engage in constitutional analysis; (2) relied on state cases that apply a constitutional analysis to similar facts; (3) asserted a claim in particular terms that call to mind a specific constitutional right; or (4) alleged a pattern of facts well within the mainstream of constitutional litigation. *See Wilson*, 243 F.3d at 327. Federal courts do not automatically conclude that a habeas petitioner has fairly presented his claim if he fulfills any one of these four factors. *See Molterno v. Nelson*, 114 F.3d 629, 634 (7th Cir. 1997). Instead, courts must carefully consider the specific facts of each case. *See Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996).

### a.     Request to Detective Markham

This court's review of the record indicates that Evans did not fully and fairly present his claim based on his alleged request to Detective Markham to the Illinois Supreme Court. In the fact section of his appellate brief on direct appeal, Evans mentioned that he had requested an attorney after being arrested and that the detective said nothing in response. However, in his argument, Evans makes no further mention of requesting counsel to Detective Markham or his rights under the Fifth Amendment. Instead, Evans asserted that his Sixth Amendment right to

13

counsel had attached once the police began the interrogation. Evans claimed that "[h]is custodial interrogation was a 'critical stage' during which an attorney should have been provided him absent a valid waiver of his right." Evans cited United States Supreme Court case law for the proposition that the Sixth Amendment right to counsel "means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams,* 430 U.S. 387, 398-99 (1977) (citations omitted). Evans also cited Supreme Court case law in support of his assertion that he did not waive his Sixth Amendment right to counsel. *See Edwards v. Arizona,* 451 U.S. 477 (1981).

Although Evans relied on United States Supreme Court cases engaging in constitutional analyses, his constitutional analysis to the Illinois Supreme Court did not involve the claim that Evans presents to this court in his habeas petition. Here, Evans brings a Fifth Amendment claim asserting that he invoked his right to counsel by asking Detective Markham for an attorney. His claim to the Illinois Supreme Court was based on the Sixth Amendment and the Illinois Supreme Court addressed the claim as such concluding that Evans' Sixth Amendment right to counsel did not attach at the time of the police interrogation. *See Evans I,* 125 Ill.2d at 78-79, 125 Ill.Dec. at 802, 530 N.E.2d at 1372.

Accordingly, Evans has procedurally defaulted his claim based on his alleged assertion to Detective Markham. *See Boerckel,* 526 U.S. at 844-45. Evans does not argue cause and prejudice for his failure to bring this claim in the Illinois courts or that a fundamental miscarriage of justice will occur if this court does not consider his claim. *See Coleman,* 501 U.S. at 750. Therefore, the court is barred from reviewing this claim on collateral review.

14

### b.    Request to Assistant State's Attorney Merritt

The State concedes that Evans did not procedurally default his claim regarding his request for counsel to Assistant State's Attorney William Merritt. Basing his claim on the Fifth Amendment, Evans contends that the Illinois Supreme Court's decision was an unreasonable application of clearly established Supreme Court precedent.

Applying *Miranda v. Arizona*, 384 U.S. 436 (1966), *Edwards v. Arizona*, 451 U.S. 477 (1981), and *Smith v. Illinois*, 469 U.S. 91 (1984), the Illinois Supreme Court analyzed whether Evans had requested or waived counsel. Based on the following conversation between Evans and Assistant State's Attorney Merritt, the Illinois Supreme Court concluded that Evans never invoked his right to counsel in the first instance:

> MERRITT: I'm going to read you your rights, again, from this form entitled, waiver of Constitutional rights. Do you understand that you have a right to remain silent?
>
> EVANS: Yes.
>
> MERRITT: Do you understand that anything you say can and will be used against you in a court of law?
>
> EVANS: Yes.
>
> MERRITT: Do you understand that you have the right to talk to a lawyer and have him present with you while you are being questioned?
>
> EVANS: Yes.
>
> MERRITT: Do you understand if you cannot afford to hire a lawyer, one will be appointed by the Court to represent you before any questioning, if you wish one?
>
> EVANS: You mean, I can have a PD [Public Defender] in here, or do you mean I have to wait?
>
> MERRITT: You can have a lawyer if you want one when we talk. Do you understand that?

EVANS: Yes.

MERRITT: Do you understand each of these rights I have explained to you?

EVANS: Yes.

MERRITT: Understanding these rights, do you wish to talk to us now?

EVANS: We can take time for you to get a PD, right?

MERRITT: It will take a little while. I'll stop the questioning, and we will call for a public defender.

EVANS: No, go ahead.

MERRITT: Go ahead with this interview?

EVANS: Yes.

*Evans I,* 125 Ill.2d at 73-75, 125 Ill.Dec. at 799-800, 530 N.E.2d at 1369-70. Based on this exchange, the Illinois Supreme Court concluded that Evans was inquiring about the availability of a public defender and that when the Assistant State's Attorney stopped the questioning, Evans stated to go ahead with the interview. *See id.* at 75, 125 Ill.Dec. at 800, 530 N.E.2d at 1370.

The Illinois Supreme Court's decision is consistent with the facts and circumstances of this case, and therefore, a reasonable application of clearly established Supreme Court precedent. *See Searcy,* 332 F.3d at 1089. Specifically, the Illinois Supreme Court reviewed the appropriate United States Supreme Court law and evaluated the evidence regarding Evans' request for counsel. Relying on the law and facts, the Illinois court concluded that Evans did not invoke his right to counsel; therefore, the interrogation that ensued did not violate the Fifth Amendment. Because the Illinois court's conclusion is not outside the boundaries of permissible differences of opinion, *see Hardaway,* 302 F.3d at 762, it is not an unreasonable application of clearly

16

established Supreme Court law. Accordingly, this court denies Evans' habeas claim based on his Fourth and Fifth Amendment rights.

## B.    DEFECTIVE INDICTMENT (Claim 2)

Evans contends that his constitutional rights were violated because his indictment did not sufficiently allege what acts constitute the criminal offense of attempted rape.

On direct appeal, Evans argued that the indictment was defective because it did not set forth the nature and elements of the offense as required under Illinois law. In his brief to the Illinois Supreme Court, Evans relied on Illinois cases interpreting the relevant Illinois "attempt" statute. In his petition to this court, however, Evans has changed the basis of his defective indictment claim from a state law claim to a constitutional claim. As such, Evans did not fully and fairly present his constitutional claim to the Illinois Supreme Court. *See Rodriguez v. Scillia,* 193 F.3d 913, 917 (7th Cir. 1999) (by changing basis of defective indictment claim from Illinois law to constitutional law, habeas petitioner failed to fairly present constitutional claim to state court). Therefore, this claim is procedurally defaulted. *See Boerckel,* 526 U.S. at 845. Because Evans has made no argument supporting cause and prejudice, or the fundamental miscarriage of justice exception, this court is barred from considering his defective indictment claim on collateral review. *See Coleman,* 501 U.S. at 750.

## C.    FAIR AND IMPARTIAL JUDGE (Claim 4)

Evans' next habeas claim is that he was denied a fair pretrial hearing before an impartial and unbiased judge in violation of his due process rights. Evans contends that Judge Palmer's recusal after ruling on his pretrial motions supports his argument that the trial judge was biased when determining the motions. More specifically, Evans argues that because Judge Palmer

17

expressly conceded that he could not give Evans a fair trial due to the previous contempt proceedings involving his attorneys in another matter, Evans reasons it was "inevitable" that the judge's decisions on his pretrial motions were "unconsciously tainted by his prejudicial feelings." Evans, therefore, contends that the Illinois Supreme Court's decision that Judge Palmer was not biased is an unreasonable application of clearly established Supreme Court precedent.

Criminal defendants have a constitutional right to be tried before a fair and impartial judge. *Bracy v. Gramley,* 520 U.S. 899, 904-05 (1997). The due process clause "requires that a defendant receive a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* (citations omitted). In reviewing a judicial bias claim, this court must employ the initial presumption that Evans' trial judge properly discharged of his official duties. *See id.* at 909 (quotations and citation omitted).

Here, the Illinois Supreme Court carefully considered Evans' claim of judicial bias, concluding that Judge Palmer's rulings were objective and supported by the evidence. *See Evans I,* 124 Ill.2d at 79-80, 125 Ill.Dec. at 802-03, 530 N.E.2d at 1372-73. When making its determination, the Illinois Supreme Court noted that Judge Palmer's alleged prejudice was directed towards Evans' counsel, not Evans himself and that "the court in no way indicated that its feelings interfered with its rulings on the motions at issue, only that they might impede its ability to give defendant a fair trial." *Id.* Further, the Illinois Supreme Court concluded that because the trial court was in the best position to determine whether it was prejudiced against Evans, the Illinois Supreme Court was confident that Judge Palmer would have recused himself from ruling on the pretrial motions if he could not render a fair ruling. *See id.* at 80, 125 Ill.Dec. at 803, 530 N.E.2d at 1373. Therefore, the Illinois Supreme Court's decision was an objectively

reasonable application of Supreme Court precedent based on the facts and circumstances of this case. *See Searcy,* 332 F.3d at 1089.

Evans' argument that it was "inevitable" that Judge Palmer's decisions on his pretrial motions were "unconsciously tainted by his prejudicial feelings" does not establish that the Illinois court's decision was unreasonable under 28 U.S.C. § 2254(d)(1). Where, as here, the constitutional question is a matter of degree rather than a clear entitlement, a responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the state court's ruling. *See Lindh v. Murphy,* 96 F.3d 856, 871 (7th Cir. 1996), *rev'd on other grounds,* 521 U.S. 320 (1997). The Illinois Supreme Court's decision is just that – a responsible, thoughtful answer based on the record after Evans was given a full opportunity to litigate his judicial bias claim. In addition, Evans did not present any evidence or argument to overcome the presumption that Judge Palmer properly discharged of his official duties. *See Bracy,* 520 U.S. at 905. Accordingly, the court denies Evans' impartial judge claim.

### D.     BATSON (Claim 5)

Evans asserts that the prosecution systematically and purposefully excluded black members of the venire from jury service in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986). In *Batson,* the United States Supreme Court held that prosecutors cannot challenge potential jurors solely on the basis of their race. *See id.* at 89. Pursuant to *Batson,* courts apply a three-step analysis in considering challenges to a prosecutor's use of peremptory challenges: (1) the defendant must make a *prima facie* showing of discrimination; (2) the prosecution must then present a race neutral explanation for use of the peremptory challenge; and (3) the court then

determines whether the prosecution's stated reason is pretextual and whether the defendant has proven purposeful discrimination. *See id.* at 93-94, 97-98.

To make a *prima facie* showing under the first step in *Batson*, a defendant must demonstrate that he is a member of a racial group, that the prosecution used peremptory challenges to remove potential jurors of the defendant's race, and that the relevant circumstances create an inference of intentional discrimination. *See id.* at 96. Relevant circumstances considered in evaluating *Batson* challenges include the pattern of peremptory strikes and the prosecution's questions and comments. *See id.* at 97.

The Illinois Supreme Court concluded that Evans had established that he was a member of a racial group, and thus, focused on the remaining factors of whether Evans had established a *prima facie* case of discrimination under the first *Batson* step:

> Considering these circumstances in light of the actual facts of this case, we conclude that the trial court's finding that defendant failed to establish a *prima facie* case of discrimination was not against the manifest weight of the evidence. The trial court at the *Batson* hearing on remand found no pattern to the State's use of peremptory challenges against black jurors which would show purposeful discrimination. Defendant has not presented any evidence to the contrary. The trial court, not the prosecutor, conducted the *voir dire,* and defendant does not contend on appeal, nor did he at trial, that the prosecutor's statements in exercising peremptory challenges indicated that the challenges were discriminatory.
>
> ....
>
> Perhaps even more significantly, unlike *Batson* this is not a case involving an interracial crime in which specific racial groups would be prone to take sides of prejudice. Here, the defendant is black, the victim was black, and the majority of witnesses are black. Any racial issue inherent in the selection of the jury is therefore minimal, if not nonexistent. Both pre-*Batson* and post-*Batson* cases recognize that the racial characteristics of a crime are important factors to be considered by the trial court in determining whether a *prima facie* case of discrimination has been established. Indeed, as one court has found, there is no

20

advantage to a prosecutor in excluding blacks from a jury where the State's primary witnesses are black.

While reviewing the relevant circumstances of this case, we must keep in mind that the initial determination of whether a *prima facie* case has been established is left to the judgment of the trial judge, who is in a superior position to determine whether the prosecutor's exercise of peremptory challenges was motivated by group bias. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a *prima facie* case of discrimination against black jurors. Trial judges are especially well suited to make this determination because they are familiar with local conditions and prosecutors, and can draw upon their power of observation and judicial experience as a guide in distinguishing a true case of discrimination from a false one.

*Evans I,* 125 Ill.2d at 64-67, 125 Ill.Dec. at 795-97, 530 N.E.2d at 1365-67 (internal quotations

and citations omitted). Based on the above, the Illinois court concluded that Evans did not make

a *prima facie* showing of discrimination under the first *Batson* criterion. *See Evans I,* 125 Ill.2d

at 68-69, 125 Ill.Dec. at 797, 530 N.E.2d at 1367.

The Illinois Supreme Court's decision is consistent with the facts and circumstances of

this case, and therefore, an objectively reasonable application of *Batson. See Searcy,* 332 F.3d at

1089. The Illinois court concluded that the trial court did not find a pattern to the prosecution's

use of peremptory strikes and that Evans had not presented evidence contradicting this

conclusion. Also, the Illinois court concluded that Evans did not argue or establish that the

prosecution's exercise of the peremptory challenges indicated any discrimination.

Evans, however, argues that the Illinois Supreme Court's conclusion was an unreasonable

application of *Batson* because the court based its decision on the mistaken fact that the majority

of the trial witnesses were black, when in fact, the majority of the witnesses were white. The

post-conviction Illinois Supreme Court, however, concluded that this argument was waived, and

therefore, did not address the merits of this claim. *See Evans II,* 186 Ill.2d at 92-93, 237 Ill.Dec. at 123, 708 N.E.2d at 1163.

A federal court cannot review a habeas claim if the state court's decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *See Stewart,* 536 U.S. at 860. Because waiver is an independent and adequate state ground in Illinois, *see Whitehead,* 263 F.3d at 726-27, this court is barred from reviewing Evans' claim that the Illinois Supreme Court erred by considering the race of the witnesses. Because Evans has made no argument to overcome his procedural default, this court cannot collaterally review this claim. *See Coleman,* 501 U.S. at 750.

Evans argues that the Illinois Supreme Court's decision was an unreasonable application of *Batson* because he was not required to present evidence of a pattern of the prosecution's use of peremptory challenges against black jurors. This argument is procedurally defaulted because Evans did not present it to the Illinois courts before presenting it to this court in his habeas petition. *See Boerckel,* 526 U.S. at 845. Once again, Evans makes no argument as to why this court should consider this claim despite it being procedurally defaulted. *See Coleman,* 501 U.S. at 750. Thus, this court cannot review this new basis supporting Evans' *Batson* claim.

### E.     OTHER CRIMES EVIDENCE (Claim 6)

Next, Evans contends that he was deprived his constitutional right to a fair trial because the prosecution was allowed to introduce irrelevant and prejudicial evidence concerning the sexual assaults of Webb and Mitchell over defense's objections. Evans argues that the Illinois Supreme Court's ruling on this evidentiary claim was an unreasonable application of clearly established Supreme Court precedent.

In most cases, state evidentiary rulings are not subject to collateral review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). Federal habeas courts may only review a state evidentiary ruling if it is erroneous and is of a constitutional magnitude, *i.e.*, the state court's ruling must be so prejudicial as to compromise the habeas petitioner's due process right to a fundamentally fair trial creating the likelihood that an innocent person was convicted. *See Dressler*, 238 F.3d at 914.

The Illinois Supreme Court concluded that the trial court properly admitted the other crimes evidence to establish Evans' identity which is in accord with well-established Illinois law. *See Evans I*, 125 Ill.2d at 82-83, 125 Ill.Dec. at 804, 530 N.E.2d at 1374; *see also People v. Wiley*, 165 Ill.2d 259, 291-92, 209 Ill.Dec. 261, 275, 651 N.E.2d 189, 203 (Ill. 1995) (other crimes evidence allowed to show intent, identity, motive, but not propensity to commit crime). Because the Illinois Supreme Court concluded that this evidentiary ruling was not erroneous, it would be incorrect for this court to conclude that the ruling rises to the level of denying Evans a fundamentally fair trial, especially in light of Evans' failure to establish that this alleged error led to his wrongful conviction. *See Dressler*, 238 F.3d at 914. Therefore, this claim does not warrant habeas relief.

## F.    CUMULATIVE EFFECT (Claim 9)

Last, Evans argues that the cumulative effect of the constitutional violations set forth in his second amended habeas petition deprived him of his constitutional right to fundamentally fair

23

state court proceedings. Evans asserts that although these alleged errors may have been harmless standing alone, cumulatively they amount to the denial of his constitutional rights.

Individual trial errors which alone may be harmless may, in the aggregate, violate a defendant's right to due process of law. *See Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000). To establish that the cumulative effect of the trial court's errors violated his due process rights, Evans must establish that at least two errors were committed and that the errors improperly influenced the jury's decision. *See id.* In other words, but for the trial court's multiple errors, the trial's outcome would have been different. *See id.* at 825; *see also United States v. Allen,* 269 F.3d 842, 847 (7th Cir. 2001).

Evans has not established that there was even one trial error. Without more than one error there are no ill effects to accumulate. *See Alvarez,* 225 F.3d at 825. In addition, Evans does not explain how these alleged errors improperly influenced the jury or how these errors affected the outcome of his trial. *See id.* at 824. Therefore, the court denies Evans' cumulative effect claim.

## V. EVIDENTIARY HEARING

Evans contends that an evidentiary hearing under 28 U.S.C. § 2254(e)(2) is warranted to further develop his Fifth Amendment and *Batson* claims.[2] Federal habeas courts, however, are not an alternative forum for trying facts and issues that a habeas petitioner did not pursue in state court. *See Williams,* 529 U.S. at 437. Section 2254(e)(2) provides that, if a factual basis of a

---

[2] Evans argues that an evidentiary hearing is warranted to further develop his ineffective assistance of sentencing counsel and his Fourth Amendment claims. Because this court concludes that Evans' capital sentencing claim is moot and the Fourth Amendment claim is not cognizable on habeas review, an evidentiary hearing based on these claims is not warranted.

24

claim was not developed in the state court, the federal habeas court cannot hold an evidentiary hearing unless the petitioner can show:

(A) the claim relies on –

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Evans does not argue that there is a new rule of constitutional law that was previously unavailable to him. Therefore, he must establish that the failure to develop the factual record in the state court was not his fault. *See Williams*, 529 U.S. at 432. Also, Evans must point to facts that are sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would find him guilty of the Allen homicide. *See Harris v. McAdory*, 334 F.3d 665, 669-70 (7th Cir. 2003).

Evans requests an evidentiary hearing on his claim that he invoked his Fifth Amendment right to counsel on two separate occasions. Evans, however, makes no argument supporting this request. This court's ability to hold an evidentiary hearing pursuant to § 2254(e)(2) is "severely circumscribed." *See Boyko v. Parke*, 259 F.3d 781, 789-90 (7th Cir. 2001). Evans must establish that he is not at fault for failing to develop the factual record and point to specific facts underlying his claim that would be sufficient to establish by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found him guilty of murdering

25

Allen. *See Harris,* 334 F.3d at 669-70. Because Evans has failed to meet this stringent standard, the court cannot grant an evidentiary hearing on his Fifth Amendment claim.

Next, Evans argues that because there are new facts regarding the racial make-up of his potential jurors, he should be awarded an evidentiary hearing on his *Batson* claim. Once again, Evans does not present an argument as to why the failure to develop the factual record at the state court level was not his fault, *i.e.,* the factual predicate could not have been previously discovered through the exercise of due diligence. *See id.* at 669. Further, Evans does not establish by clear and convincing evidence, that, but for constitutional error, no reasonable factfinder would find him guilty of the underlying offense. *See id.* at 669-70. Evans, therefore, has failed to make the requisite showing for an evidentiary hearing pursuant to § 2253(e)(2). Accordingly, the court denies his request.

## VI.    CONCLUSION

For the foregoing reasons, Evans' second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [R. 84] is denied. This case is terminated.

**IT IS SO ORDERED**:

Date: Sept 8, 2003

Enter _____

**JOAN HUMPHREY LEFKOW**
**United States District Judge**



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7828 | **DATE** | 9/8/2003 |
| **CASE TITLE** | | Evans vs. Briley | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due _____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Johnnie Lee Evans' second amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254[R.84] is denied. This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 0 9 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT | | 88 |
| ✓ | Mail AO 450 form. | CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 SEP -8 PM 3:01 | 9/8/2003 | |
| MD | courtroom deputy's initials | FILED FOR DOCKETING | date mailed notice | |
| | | Date/time received in central Clerk's Office | MD | mailing deputy initials |